IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RALPH CAPUTO**<br>1527 W. Porter Street<br>Philadelphia, PA 19145<br>                              Plaintiff, | CIVIL ACTION - LAW |
| v. | |
| **CITY OF PHILADELPHIA**<br>1515 Arch Street, 14th Floor<br>Philadelphia, PA 19102, | NO.: |
| **CHRISTIAN FENICO, Individually and in**<br>**his Official Capacity as a Police Officer**<br>**in the Philadelphia Police Department**<br>c/o First District Police Department<br>24th and Wolf Streets<br>Philadelphia, PA 19145, | JURY TRIAL DEMANDED |
| **OFFICER FISHER, Individually and in**<br>**his Official Capacity as a Police Officer**<br>**in the Philadelphia Police Department**<br>c/o First District Police Department<br>24th and Wolf Streets<br>Philadelphia, PA 19145, | |
| **LOUIS CAMPIONE, CAPTAIN**<br>**CITY OF PHILADELPHIA**<br>**POLICE DEPARTMENT, 1st DISTRICT**<br>(individually and in his official capacity)<br>24th & Wolf Streets<br>Philadelphia, PA 19145, | |
| **CHARLES H. RAMSEY, Individually and in his**<br>**Official Capacity as Police Commissioner**<br>**of the City of Philadelphia**<br>Headquarters, Franklin Square<br>Philadelphia, PA 19106, | |
| **OFFICERS JOHN DOE I - V,**<br>**CITY OF PHILADELPHIA**<br>**POLICE DEPARTMENT**<br>(individually and in their official capacity)<br>Headquarters, Franklin Square<br>Philadelphia, PA 19106,<br>                              Defendants. | |

**CIVIL ACTION COMPLAINT**

- 1 -

**CIVIL ACTION COMPLAINT**

Plaintiff RALPH CAPUTO brings this action to recover for federal constitutional and statutory violations arising from his unlawful seizure, arrest, prosecution, injuries and harassment, as follows:

1. Defendants, both individually, jointly and/or severally, are liable to Plaintiff for, but not limited to, the below causes of action and remedies which are averred based upon information and belief, or will become known in discovery and/or trial.

2. Plaintiff reserves the right to rely upon the "discovery rule" and the respective doctrines of equitable tolling and fraudulent concealment.

3. Plaintiff, RALPH CAPUTO, was wrongfully subjected to unlawful seizure, search, arrest, detainment, assault, battery and subsequent prosecution, as well as excessive force. These actions toward Plaintiff were the direct result of the pervasive, intentional and systematic misconduct of the individual Defendants, including Officers John Doe(s), and the failure of the Defendants to properly train, supervise and discipline the individual defendants and other John Doe Police Officers regarding their professional duties, as well as to refrain from violating the constitutional rights of citizens.

PARTIES

4. Plaintiff, RALPH CAPUTO, is an adult individual residing at 1527 W. Porter Street, in the City of Philadelphia, Philadelphia County, in the Commonwealth of Pennsylvania.

5. Defendant, CITY OF PHILADELPHIA (hereinafter referred to as "CITY"), is a municipality in Philadelphia County, Pennsylvania.

6. Defendant, CHRISTIAN FENICO (hereinafter referred to as "FENICO"), was at all relevant times an Officer with the Police Department of the City of Philadelphia, Philadelphia County, Pennsylvania, in its 1st Police District. He is named in this action in his individual and official capacities, and was responsible for the investigation and police prosecution relevant in this action, and he was operating in his office capacity as an employee, agent, and worker of the City of Philadelphia and its Police Department.

7. Defendant OFFICER FISHER (hereinafter referred to as "FISHER"), whose first name is

currently unknown, was at all relevant times an Officer with the Police Department of the City of Philadelphia, Philadelphia County, Pennsylvania, in its 1st Police District. He is named in this action in his individual and official capacities, and was responsible for the investigation and police prosecution relevant in this action (with Defendant FENICO), and he was operating in his office capacity as an employee, agent, and worker of the City of Philadelphia and its Police Department.

8. Defendant, LOUIS CAMPIONE (hereinafter referred to as "CAMPIONE"), was at all relevant times a Captain with the Police Department of the City of Philadelphia, Pennsylvania, in its 1st Police District. He is named in this action in his individual and official capacities. At all relevant times, Defendant CAMPIONE was the Commanding Officer and Supervisor of the 1st District, and was responsible for supervising the other police officers identified herein.

9. Defendant, CHARLES H. RAMSEY (hereinafter referred to as "RAMSEY"), was Police Commissioner for the City of Philadelphia Police Department. He is named in this action in his individual and official capacities. At all relevant times, Defendant RAMSEY was the Commissioner and Commanding Officer and Supervisor of all of the Philadelphia Police officers and agents, and was responsible for supervising all of the police officers identified herein.

10. Defendants, OFFICERS JOHN DOE I through V, were at all relevant times, fictitious names for police officers with the Police Department of the City of Philadelphia whose real names are not currently known, but will be substituted when known, as affiliated, associated or liable hereunder. Each is named in this action in his/her individual and official capacities, and they were present and involved in the official police activities which give rise to the within causes of action (as more fully described below).

## JURISDICTION AND VENUE

11. Jurisdiction in this Honorable Court is asserted under the provisions of 28 U.S.C. §1331, §1343. and §1367. This action also arises under the provisions of the Civil Rights Act of 1866, as amended 42 U.S.C. §1983.

12. Venue is appropriately laid in this Court pursuant to 28 U.S.C. 1391(b) in that the actions complained of took place within the District and the Plaintiffs and Defendants have carried on business within

the District and/or at least one Defendant resides, maintains a principal place of business, is incorporated or does business in this district, and the subject of this action is situated within this district.

## FACTUAL ALLEGATIONS ON THE MERITS

13. On or about October 29, 2012, at approximately 8:00 p.m., Defendant FENICO physically assaulted and brutalized the Plaintiff without justified provocation, probable cause, exigency, or any other justifiable reason, choking him to unconsciousness, physically throwing him to the ground, striking him multiple times in the head, face and body, and causing severe and permanent injuries and damages.

14. At the same time Defendant FENICO was physically assaulting and brutalizing the Plaintiff, Defendant FISHER was present at did nothing to stop Defendant FENICO from his attack on the Plaintiff.

15. On the night of Monday, October 29, 2012, at approximately 8:00 p.m., Plaintiff RALPH CAPUTO was sitting outside of his residence on W. Porter Street, in Philadelphia, PA. At that time, he was with his girlfriend, a Ms. Alexa Robles.

16. At approximately 8:00 p.m. that same night, Officers FENICO and FISHER drove their patrol car down W. Porter Street, and as they approached its intersection with Mole Street, they pulled over to the curb to ask Ms. Robles some questions, as she was standing near the corner of the intersection.

17. The Defendant Officers remained in their patrol car and talked with Ms. Robles and the Plaintiff RALPH CAPUTO at length....asking questions and determining why they were called to a "disturbance".

18. Since Plaintiff owned the W. Porter Street property, the Defendant Officers indicated that Plaintiff was to stay there, but that Ms. Robles had to leave that location, since she was not on the deed and despite the fact that she had nowhere to go.

19. Both Plaintiff and Ms. Robles attempted to explain to the Defendant Officers that there was no problem or argument, and that she should stay in the apartment for the evening because she had nowhere to go. The Defendant Officers refused to allow this to occur.

20. After several minutes of discussion, the Defendant Officers parked their patrol car and approached the Plaintiff and Ms. Robles on foot, at which time Defendant FENICO began verbally cursing and yelling at Plaintiff CAPUTO. Defendant FENICO asked Ms. Robles 'what she was doing with such a loser like

Plaintiff CAPUTO".

21.     Plaintiff, RALPH CAPUTO, was explaining the nature of his relationship with Ms. Robles and answering the officer's questions when suddenly, without warning, and to the shock of the Plaintiff and even Defendant FISHER, Defendant FENICO violently and physically grabbed the Plaintiff and pushed his fists into the Plaintiff's face causing the Plaintiff to fall hard to the ground. During this action, Defendant FISHER stood next to Defendant FENICO, scanning the immediate area for any other individuals who might be watching them.

22.     The force of this action by Defendant FENICO broke Plaintiff CAPUTO's nose.

23.     Without provocation and/or any resistance from Plaintiff RALPH CAPUTO, Defendant FENICO began to choke Plaintiff CAPUTO and strike him repeatedly in his face and body while he was on the ground.

24.     As Plaintiff CAPUTO was screaming and begging Defendant FENICO to stop beating him, Defendant FISHER was standing next to Defendant FENICO watching him beat the Plaintiff, and, in fact, Defendant FISHER did nothing to prevent the beating from continuing other than to repeatedly ask Defendant FENICO to stop.

25.     Due to the commotion created by Defendant FENICO's actions in beating Plaintiff CAPUTO, neighbors in the area started to come out of their properties, and a call was made to '911' by one of these neighbors due to the severity of the beating to Plaintiff CAPUTO.

26.     At one moment during the beating, Defendant FISHER grabbed the arm of Defendant FENICO and said "that's enough", but Defendant FENICO ripped his arm out of Defendant FISHER's hand and said "get the fuck off of me."

27.     After again physically beating the Plaintiff, Defendant FENICO then got off of the Plaintiff and started to walk back toward his patrol car.

28.     Defendant FISHER then helped Plaintiff CAPUTO off of the ground and helped him walk to the entrance of his residence instructing Plaintiff CAPUTO to "shut the fuck up or this won't end good".

29.     Plaintiff CAPUTO responded by stating that Officer FENICO went too far and that he was going to file a complaint, but that he would indicate in the Complaint that FISHER did not touch him or beat him.

30. Upon overhearing what Plaintiff CAPUTO said, Defendant FENICO turned back toward the Plaintiff, and began again repeatedly hitting him in his head. Defendant FENICO then grabbed and twisted Plaintiff CAPUTO's arm until Plaintiff CAPUTO dropped to his knees, at which point Defendant FENICO again began choking Plaintiff with a cross-armed choke hold.

31. The force of Defendant FENICO's attack was so severe that Plaintiff CAPUTO lost consciousness again and involuntarily released his bowels.

32. Plaintiff was screaming and begging Defendant FENICO to stop to which FENICO responded "go fuck yourself".

33. Plaintiff CAPUTO then began screaming for help from anyone to call the police to which Defendant FENICO applied a firmer choke hold until Plaintiff CAPUTO was unable to get any noise out of his throat.

34. After defendant FENICO finished his physical assault upon the Plaintiff CAPUTO, Plaintiff CAPUTO was placed under arrest and taken to the patrol car by both Defendants FENICO and FISHER.

35. During the beating by Defendant FENICO of Plaintiff CAPUTO, Defendants JOHN DOE I-V responded to the 911 call of the neighbors, but upon their approach to the scene via patrol car, they failed to stop and investigate, opting instead to simply disregard the severity of the situation and drive away without any investigation once they determined that fellow police officers were the subject of the incident.

36. At no time during the physical assault and beating to Plaintiff CAPUTO by defendant FENICO did Defendant FISHER or the Police Officers and Defendants JOHN DOES I-V take any action to stop the beating from occurring, or to take control of the situation, but rather, they either stood by and watched and encouraged defendant FENICO to continue his beating of the Plaintiff CAPUTO, or they simply disregarded the events and ignored them.

37. When the Defendants FENICO and FISHER arrived at the intersection of Porter and Mole Streets, as described above, Plaintiff CAPUTO and his girlfriend were unarmed, there was no dispute in progress concerning either individual, and there was no need or justification for the Defendant officers to engage Plaintiff CAPUTO in any activity whatsoever.

38. Upon their arrival at the scene, it was obviously not a violent or dangerous scene or one that would warrant Defendants FENICO and/or FISHER to determine that the use physical and/or excessive force upon Plaintiff CAPUTO was warranted.

39. Defendant FENICO's actions and Defendants' FISHER and JOHN DOE I-V inactions toward Plaintiff CAPUTO were contrary to accepted and proper police practices and in violation of the Plaintiffs' clearly established constitutional and statutory rights.

40. Defendants FENICO and FISHER did not have a search warrant or an arrest warrant for Plaintiff CAPUTO, and there were no exigent circumstances or immediate danger to the community or to the police officers justifying the physical assault upon the Plaintiff CAPUTO.

41. Defendant FENICO, acting with deliberate indifference, willfully disregarded proper policies and procedures and instead approached Plaintiff CAPUTO in a loud, hostile and confrontational manner, and without any effort to ascertain whether or not Plaintiff CAPUTO posed any type of threat to his person or community.

42. Defendants FENICO, FISHER and JOHN DOES I-V repeatedly violated accepted police practice standards for responding to disturbances and for dealing with members of the public.

43. When Plaintiff CAPUTO demanded to know why Defendant FENICO was physically assaulting and brutalizing him, all defendants provided no explanation or response.

44. Defendant FENICO repeatedly cursed at Plaintiff CAPUTO and treated him in a demeaning manner, refusing to give the Plaintiff any opportunity to respond or defend himself.

45. At every opportunity relevant to this incident, Defendants FENICO, FISHER and Defendants JOHN DOES I-V, acting with deliberate indifference, heightened the level of confrontation and escalated the tension of the situation.

46. As a result of this conduct by the defendants, Plaintiff RALPH CAPUTO felt trapped and was severely fearful of the police officers surrounding him and the officer beating him while he was completely subdued and unable to protect himself.

47. At all relevant times, Defendants FENICO, FISHER and JOHN DOES I-V knew and/or should have known that Plaintiff CAPUTO was not a threat to them in any way.

48. Defendants FENICO, FISHER and Defendants JOHN DOES I-V, acting with deliberate indifference, refused to utilize any peaceful mechanisms for resolving the situation they had created, and instead isolated Plaintiff CAPUTO from his private sources of aid.

49. Defendants FENICO, FISHER and Defendants JOHN DOE I-V further escalated the situation, contrary to accepted police practices and contrary to Plaintiffs' constitutional and federal statutory rights, as they placed Plaintiff CAPUTO in handcuffs and placed him into police custody.

50. Plaintiff CAPUTO, continuing his desperate efforts to avoid serious physical injury and a confrontation with police, and in desperate fear of harm to himself, begged the Defendant Officers to just tell him what he had done wrong.

51. Instead of providing any explanation, Defendant FENICO told Plaintiff CAPUTO to "shut up, bitch" and turned up their patrol car radio to full volume so that Plaintiff CAPUTO could not be heard.

52. Upon arriving at the police station, Defendants FENICO and FISHER got out of the patrol car, leaving Plaintiff CAPUTO alone as he could hear Defendant FENICO loudly talking on his cell phone about the Plaintiff.

53. While in the patrol car, Plaintiff CAPUTO witnessed several police officers (Defendants John Does I-V) come up to the car and look in at Plaintiff and then walk away providing no assistance whatsoever, despite having obviously been informed of the previously transpired events by their peers, and wanting to get a glance at Plaintiff Ralph Caputo..

54. After some time, several unknown police officers (Defendants John Does I-V) came to the patrol car, opened the door, removed Plaintiff CAPUTO from the patrol car, removed the handcuffs from Plaintiff CAPUTO's wrists, and told him to "walk home" without explanation, providing no further assistance or information.

55. While Plaintiff CAPUTO was being released from the handcuffs and told to walk home, Defendant FENICO was walking away from the patrol car, screaming and cursing about the situation.

56. Due to the severity of his injuries, Plaintiff was barely able to walk to his home, but once he finally made it to his residence, he called '911' to report what had happened.

57. Several witnesses and neighbors waited with the Plaintiff for a response to the '911' call and, ultimately, a Sergeant Venit from the Philadelphia Police Department, 3rd District, appeared at the residence to receive Plaintiff CAPUTO's complaint. However, Sgt. Venit took down all of Plaintiff's information and complaint, and told Plaintiff CAPUTO that he would be hearing from Internal Affairs Unit. Plaintiff never did hear from them after that day, but was subsequently issued a Citation for Disorderly Conduct.

58. Thereafter, and on October 30, 2012, Plaintiff RALPH CAPUTO spent approximately 2.5 hours in the emergency room at Jefferson University Hospital where he was examined and given diagnostic tests for his injuries. He then received extensive medical treatment, therapy and diagnostic testing with various other physicians and medical facilities which treatment continues to the present time.

59. As a direct result of the Defendants' actions, Plaintiff RALPH CAPUTO suffered severe and permanent personal injuries, including head trauma, loss of consciousness, nasal fracture, head, neck and back trauma and injuries to the spine and vertebrae, multiple abrasions, lacerations, and bruising about the face, head and contusions and abrasion in and about the head and body, and other residual personal injuries

60. At all relevant times, Defendants knew and/or should have known that Plaintiff RALPH CAPUTO had sustained serious injuries as a result of their actions.

61. Nonetheless, Defendants acted with deliberate indifference to Plaintiff's serious medical needs and significantly restricted his freedom to act on his own behalf.

62. Defendants have acted with malice and/or callous indifference toward Plaintiffs' federal constitutional and statutory rights.

63. At all times during the events described above, each of the Defendants agreed with and assisted each of the other police officers in performing the various actions described herein, and lent their support and the authority of their office to each other during said events.

64. Defendants each advised, assisted, ratified and/or directed the actions taken against Plaintiff RALPH CAPUTO

65. Each of the Defendant officers played a substantial role and provided input which affected the adverse actions against Plaintiff RALPH CAPUTO.

66. Defendants used unnecessary, unreasonable and excessive force against Plaintiff RALPH CAPUTO.

67. Defendants' conduct shocks the conscience of this community and of the Police Department.

68. Defendants acted with malice and/or deliberate indifference toward Plaintiff RALPH CAPUTO and his federal rights.

69. Plaintiff RALPH CAPUTO's serious injuries were a foreseeable and direct result of Defendants' actions and inactions.

70. Plaintiff RALPH CAPUTO's constitutional rights were clearly established at the time of Defendants' actions.

71. Defendants violated the Plaintiff's clearly established and well settled federal constitutional rights, including but not limited to the right to liberty, and personal security, the right to be free from unreasonable searches and seizures, and the right to be free from the use of excessive, unreasonable and unjustified force.

72. City of Philadelphia Police Officers, including those named as defendants herein, have a pattern and practice of using unreasonable and excessive force and violating the civil rights of those with whom they come into contact.

73. Defendants CITY, CAMPIONE and RAMSEY did not provide adequate training or supervision to its Police Department and Officers, and, in particular, failed to train and supervise the officers regarding the policies and procedures for responding to disturbance calls, investigating disturbances and/or alleged disturbances, questioning persons, taking persons into custody, and protecting the rights of individuals.

74. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V have, with deliberate indifference, failed to adequately train, supervise and discipline their officers to prevent civil rights violations within the City, and the injuries to Plaintiff were caused by, and were a foreseeable consequence of, such failures.

75. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V have, with deliberate indifference, failed to adequately train and supervise their officers concerning the proper way to

respond to a report of a domestic disturbance, and the injuries to Plaintiff were caused by, and were a foreseeable consequence of, such failures.

76. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V have, with deliberate indifference, failed to adequately train and supervise their officers concerning the proper way to handle a disturbance, and the injuries to Plaintiff were caused by, and were a foreseeable consequence of, such failures.

77. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V have, with deliberate indifference, failed to adequately train and supervise their officers concerning the proper use of force and deadly force, and the injuries to Plaintiff were caused by, and were a foreseeable consequence of, such failures.

78. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V have, with deliberate indifference, failed to adequately train and supervise their officers concerning the proper provision of medical care to injured suspects, and the injuries to Plaintiff were caused by, and were a foreseeable consequence of, such failures.

79. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V knew and/or reasonably should have known that they and the City had provided inadequate training, supervision and discipline to Defendant officers, and that this failure of training, supervision and discipline was likely to result in the constitutional and statutory violations that caused Plaintiff RALPH CAPUTO's injuries.

80. As a direct and proximate result of the Defendants' unlawful and discriminatory actions and inactions against Plaintiff, Plaintiff RALPH CAPUTO has suffered grievously and needlessly.

81. Defendants' actions and inactions have caused Plaintiff RALPH CAPUTO permanent and disfiguring injuries.

82. As a direct and proximate result of the Defendants' actions and inactions as alleged, Plaintiff RALPH CAPUTO has experienced extreme mental and physical pain and suffering, embarrassment, humiliation, the loss of liberty, the loss of his ability to enjoy the pleasures of life.

83. As a direct and proximate result of Defendants' actions and inactions, Plaintiff RALPH CAPUTO has lost earnings and earning capacity and he has lost the ability to provide services and earnings to himself and

his family.

84. Plaintiff suffered damage to his real and personal property and other incidental damages as a result of Defendants' actions and inactions.

85. Also as a result of Defendants' actions, Plaintiff RALPH CAPUTO has been forced to incur significant medical expenses for the care and treatment of the injuries he sustained in this incident.

## COUNT I
## CIVIL RIGHTS VIOLATION
*Plaintiff v. Fenico, Fisher, and John Does I-V*

86. The allegations of all the preceding and subsequent sections and paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

87. Defendants' actions stated above, inter alia, were committed under color of state law and were violations of the Plaintiff's clearly established and well-settled constitutional and other civil rights.

88. Defendants caused Plaintiff to suffer violations including selective prosecution, false arrest, malicious prosecution, and Plaintiff's right to equal protection, as well as violations of Plaintiff's rights to be free from unlawful search and seizure, and excessive force, all in violation of the IV and XIV Amendments to the United States Constitution.

89. As a direct and proximate result of Defendants' actions, Plaintiff RALPH CAPUTO was severely injured as stated herein.

## COUNT II
## 42 U.S.C. 1983 - *MONELL*
*Plaintiff v. City, Fenico, Fisher, Campione, Ramsey and John Does I-V*

90. The allegations of all the preceding and subsequent sections and paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

91. The decisions and actions of the officials of the Defendant CITY as set forth herein represented and constituted the official policy and/or customs of the City of Philadelphia.

92. As reflected in the actions taken against Plaintiff RALPH CAPUTO, it was the policy, practice and/or custom of the Defendants to use excessive force against people within the City of Philadelphia.

93. Prior to the events described herein, the Defendants developed and maintained policies, practices

and/or customs exhibiting deliberate indifference to the constitutional rights of persons within the City of Philadelphia, which caused the violation of Plaintiff RALPH CAPUTO's rights.

94. It was the policy and/or custom of the Defendants to inadequately and improperly investigate citizen complaints of constitutional violations by city officials, and such violations were instead tolerated by the City of Philadelphia.

95. It was the policy, practice and/or custom of the Defendants to inadequately supervise and train its officials, including those identified herein, thereby failing to adequately prevent and discourage further civil rights violations on the part of its officials.

96. Defendants CITY, CAMPIONE and RAMSEY did not require appropriate in-service training or re-training of officials who were known to have engaged in civil rights violations.

97. Specifically, Defendants failed to adequately and properly supervise and train in various aspects of law enforcement, criminal prosecution procedure and substance, including but not limited to, the nature and existence of lawful cause, evaluation of character and evidence, and the laws of the United States, and Commonwealth of Pennsylvania, and otherwise.

98. The actions in conduct of the Defendants, FENICO, FISHER and JOHN DOES I-V, was caused by the failure of the Defendants, with deliberate indifference, to properly train, control or supervise these police officers with respect to their investigative power in accordance with the United States Constitution and the Pennsylvania Constitution.

99. As a result of the policies, practices and/or customs of the Defendants, including those identified above, City officials, including those named herein, believed that their unconstitutional and unlawful actions would not be investigated or censured, but would be tolerated.

100. The Defendants' policies, practices and customs demonstrate a deliberate indifference on the part of policymakers of the City of Philadelphia -- including Defendants named herein-- to the constitutional rights of persons within the City of Philadelphia, and were the cause of the violations of Plaintiffs' rights as alleged herein.

101. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V failed to

adequately and properly investigate citizen complaints of constitutional violations by city officials, and such violations were instead tolerated.

102. As a direct and proximate result, Plaintiff RALPH CAPUTO was severely injured as stated herein.

### COUNT III
### 42 U.S.C. § 1983 - UNREASONABLE SEARCHES AND SEIZURES
### VIOLATION OF FOURTH AMENDMENT RIGHTS
*Plaintiff v. City, Fenico, Fisher, Campione, Ramsey and John Does I-V*

103. The allegations of all the preceding and subsequent sections and paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

104. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V, acting in concert under color of law, denied Plaintiff RALPH CAPUTO his rights under the Fourth Amendment to the United States Constitution, including his right to be free from unreasonable searches and seizures, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983.

105. As a direct and proximate result, Plaintiff RALPH CAPUTO was severely injured as stated herein.

### COUNT IV
### 42 U.S.C. § 1983 - UNREASONABLE USE OF FORCE
### VIOLATION OF FOURTH AMENDMENT RIGHTS
*Plaintiff v. City, Fenico, Fisher, Campione, Ramsey and John Does I-V*

106. The allegations of all the preceding and subsequent sections and paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

107. Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V, acting in concert under color of law, denied Plaintiff RALPH CAPUTO his rights under the Fourth Amendment to the United States Constitution, including his right to be free from the use of excessive force, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983.

108. As a direct and proximate result, Plaintiff was severely injured as stated herein.

**COUNT V**
**42 U.S.C. § 1983 - SUBSTANTIVE DUE PROCESS**
**VIOLATION OF FOURTEENTH AMENDMENT RIGHTS**
*Plaintiff v. City, Fenico, Fisher, Campione, Ramsey and John Does I-V*

109.  The allegations of all the preceding and subsequent sections and paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

110.  Defendants CITY, FENICO, FISHER, CAMPIONE, RAMSEY, and JOHN DOE I-V, acting in concert under color of law, denied Plaintiff RALPH CAPUTO his rights under the Fourteenth Amendment to the United States Constitution, including his right to personal security and to be free from arbitrary government action that shocks the conscience, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983.

111.  As a direct and proximate result, Plaintiff was severely injured as stated herein.

**COUNT VI**
**STATE LAW CLAIMS - ASSAULT and BATTERY**
*Plaintiff v. Fenico, Fisher and John Does I-V*

112.  The allegations of all the preceding and subsequent sections and paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

113.  Plaintiff CAPUTO has a right to be free from unwanted and offensive or harmful intrusions upon his own body.

114.  Defendants' aforementioned conduct represents an intentional, unwanted and offensive contact with Plaintiff.

115.  Defendants acted without permission or consent of the Plaintiff.

116.  As a direct and proximate result of the Defendants' actions, Plaintiff CAPUTO sustained severe injuries and damages as stated herein.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants, individually, jointly and severally, in a amount in excess of $150,000.00, plus find and determine, after trial by jury as appropriate, that Plaintiff RALPH CAPUTO has suffered substantial and continuing injury as a result of deprivation of his civil and Constitutional rights, discrimination, and otherwise wrongful conduct and award the following relief, as appropriate:

(a) a declaration that Defendants have violated Plaintiffs' civil rights, and injunctive relief including, but not limited to monitoring and education;

(b) Statutory damages;

(c) Compensatory damages, including:

  i. Actual damages for financial injury, pain and suffering, and emotional distress,

  ii. Compensation for tort damages as a result of the bosily injury sustained by Plaintiff;

  iii. Attorneys fees, prejudgment interest, expenses, and costs of suit;

(d) punitive damages against the individual defendants in their individual capacities; and

(e) such other legal and equitable relief as the Court deems just and proper.

RAPOPORT LAW OFFICES, LLC

BY: *DMR4412*
DAVID M. RAPOPORT, ESQUIRE
Attorney I.D. No. 57702
1422 Two Penn Center Plaza
Philadelphia, PA 19102
Tel: (215) 963-9393
Fax: (215) 717-0707
Email: david@legalrap.com
Counsel for Plaintiff

Dated: October 24, 2014